UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK DIXON,

    Plaintiff,

v

ALEXIS KRAFT, *et al.*,

    Defendants.

Civil Action No.: 16-14439
Honorable Denise Page Hood
Magistrate Judge Elizabeth A. Stafford

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT, AND TO *SUA SPONTE* DISMISS THE
CLAIMS AGAINST THE NONMOVING DEFENDANTS
[ECF NOS. 13, 15]**

**I.   INTRODUCTION**

Plaintiff Frederick Dixon sues Parole Agent Supervisor Alexis Kraft, Sheriff Deputy Adkins, Corporal Kittle, Sergeant Teets, Parole Agent Chad Duffing, and Parole Agent Kyra Bennett, alleging violations of the Fourth Amendment, the Michigan Constitution, and Michigan Administrative Code Rule 791.7735. [ECF Nos. 1, 13]. Kraft, Duffing and Bennett now move for summary judgment on the basis of qualified immunity, and for dismissal of Dixon's supplemental state claims. [ECF No. 13]. In response, Dixon asks the Court to hold defendants' motion in abeyance to allow for discovery, or

in the alternative, to grant summary judgment in his favor. [ECF No. 15]. The Court **RECOMMENDS** that the moving defendants' motion for summary judgment be **GRANTED**, that the claims against the nonmoving defendants be dismissed *sua sponte*, and that Dixon's motion for abeyance or summary judgment also be **DENIED**.

## II.    BACKGROUND

On June 19, 2015, defendants Adkins, Kittle, Teets, Duffing, and Bennett conducted a parole compliance check on Dixon's residence. [ECF No. 1, PageID 5]. Defendants performed the check because Ypsilanti Police Officer Michael Thompson reported that criminal activity was taking place in Dixon's garage. [ECF No. 13, PageID 56-57, citing ECF No. 13-5]. (Thompson is not a party to this case.)

Upon arriving at Dixon's residence, law enforcement noted that the garage door was halfway open and saw two people inside the garage. [ECF No. 13, PageID 57, citing ECF No. 13-3, PageID 87]. As they approached, the door opened fully, and Dixon and another person fled. [*Id.*]. Dixon was apprehended and detained. [*Id.*; ECF No. 1, PageID 5]. Deputy Adkins then entered the garage and found plastic baggies containing cocaine, a box of plastic sandwich bags, a razor blade, a crack-pipe in an ashtray, another baggie of cocaine in chunks, several partially

torn plastic baggies said to be consistent with packaging narcotics for sale, prescription pills and prescriptions, another crack-pipe, an open box of baking soda, and a discolored spoon. [ECF No. 13, PageID 57-59, citing ECF No. 13-3, PageID 88-90]. Duffing also identified a briefcase in the garage as belonging to Dixon. [*Id.*]. Officers arrested Dixon on multiple charges, and he pleaded guilty to possession of a controlled substance in July 2015. [ECF No. 13, PageID 59; ECF No. 13-3, PageID 90].

Dixon's complaint alleges that defendants' conducted an illegal search. [ECF No. 1]. The moving defendants, Bennett, Duffing and Kraft, argue that they did not violate Dixon's Fourth Amendment rights and that they are therefore entitled to qualified immunity. The Court agrees, and finds that the same conclusion applies to the nonmoving defendants.

## III.  ANALYSIS

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id.* at 324. The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). But "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). A scintilla of evidence is also insufficient; "there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252. And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott,* 550 U.S. at 380.

After considering the evidence presented in the motion and response, the Court rejects defendants' argument that they had reasonable suspicion to search Dixon's garage, but finds that he consented to search of his home, with or without reasonable suspicion.

**B.**

As all parties acknowledge, parolees are not entitled to the same Fourth Amendment protections as regular citizens; the Amendment's "warrant and probable cause requirements generally do not apply to searches of parolees." *United States v. Smith*, 526 F.3d 306, 308 (6th Cir. 2008). In Michigan, "a parole agent may conduct a search of a parolee's person or property" with mere "reasonable cause." *United States v. O'Connor*, No. 06-20583, 2007 WL 4126357, at *2 (E.D. Mich. Nov. 20, 2007) (quoting Mich. Admin. Code R. 791.7735(2)). This requirement is constitutionally valid and operates consistently with the federal reasonable suspicion standard. *Id.*, at *3. Dixon argues that defendants lacked reasonable cause to search the premises based on the tip from Officer Thompson alone. Defendants counter that the reasonable cause requirement was satisfied.

"Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring 'articulable reasons' and 'a

5

particularized and objective basis for suspecting the particular person ... of criminal activity.'" *United States v. Payne*, 181 F.3d 781, 788 (6th Cir. 1999) (quoting *United States v. Cortez,* 449 U.S. 411, 417-18 (1981). Here, the only indicia of suspected criminal activity asserted by defendants is that Officer Thompson informed Duffing of "illegal/criminal activity taking place" in the garage of Dixon's residence. [ECF No. 13-5, PageID 120]. Defendants provide no explanation of how Officer Thompson obtained this information. Without more information, it is impossible for the Court to make a finding of whether defendants' suspicion was reasonable.

    Defendants compare this case to *United States v. Noel*, 659 F. App'x 284 (6th Cir. 2016), *cert. denied,* 137 S. Ct. 602 (2016). In *Noel*, the parolee's supervisor was contacted by an unnamed caller who claimed that Noel was in possession of a weapon in his home. *Id.*, at 285. Though Noel argued that the caller was anonymous, the parole agent supervisor was able to discern the location of the caller and his relationship to Noel. *Id*. The caller also knew that Noel lived with his uncle and claimed that he had threatened him and other family members. *Id*. The *Noel* court noted that anonymous tips are disfavored because unidentified callers "can fib with impunity." *Id.*, at 277. Thus, they relied heavily on numerous identifying factors and other indicia of reliability in finding that the tip established

6

reasonable suspicion. By contrast, defendants in this matter have provided no information in support of the reliability of Officer Thompson's tip.

In *United States v. Lee*, 793 F.3d 680, 682 (6th Cir. 2015), *cert. denied,* 136 S.Ct. 517 (2015), the plaintiff's parole officer received a tip from another parole officer, which came from a police officer who provided security for the apartment complex where the plaintiff resided. The police officer indicated that certain residents had attested to possible weapons going in and out of the plaintiff's apartment. *Id.* The identities of these residents and the timing of their reports were unknown, and the plaintiff's parole agent did not attempt to corroborate the tip before acting on it. *Id.* at 682-83. The court found that the tip lacked the requisite indicia of reliability to justify a search. *Id.* at 687. It added, "just because a tip was passed through a police officer does not automatically make it reliable." *Id.* (citing *Payne,* 181 F.3d at 789).

Here, the *only* indicia of reliability offered in support of the tip is that it was provided by an identified police officer, which is insufficient.

## C.

Defendants alternatively contend that Dixon consented to a search upon the demand of his parole officer. Under Michigan law:

> The parole order shall require the parolee to provide written consent to submit to a search of his or her person or property

7

> upon demand by a peace officer or parole officer. The written consent shall include the prisoner's name and date of birth, his or her physical description, the date for release on parole, and the ending date for that parole. The prisoner shall sign the written consent before being released on parole.

M.C.L. § 791.236(19). Alleging that they complied with that section, defendants attach Dixon's special conditions of parole, which required him to "consent to a search of [his] person and property upon demand by a peace officer or parole officer," and allowed that his parole could be rescinded if he did not sign such a written consent. [ECF No. 13-2, PageID 76]. In a separate document, Dixon signed an acknowledgment of his parole conditions, confirming that he had "read or heard the parole conditions and special conditions and received a copy," and agreed to comply with those conditions. [ECF No. 1, PageID 8]. Dixon argues that he did not sign a "Consent Form" allowing for suspicionless searches, [ECF No. 15, PageID 131], but his agreement to comply with all of the special conditions of his release constitutes the "written consent" required by § 791.236(19).

Case law establishes that Dixon is bound by his consent to suspicionless searches. In *Samson v. California*, 547 U.S. 843, 852 (2006), the Court upheld a search because of the "plain terms" of parole requiring the parolee to agree to be searched at any time. The Court

explained that parolees enjoy few expectations of privacy because parole is a variation of imprisonment. "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Id.* (citation and quotation marks omitted). In *United States v. Smith*, 526 F.3d 306, 309-10 (6th Cir. 2008), a prisoner was serving the end of his sentence in a community residential home, and was subject to electronic monitoring. The court rejected a motion to suppress guns and drugs that were found in his basement because the defendant was made "'aware' that his home was subject to search at any time, with or without suspicion," and thus enjoyed little, if any, reasonable expectation of privacy. *Id.* And in *United States v. Stevenson*, No. 14-20219, 2015 WL 3651016, at *1 (E.D. Mich. June 11, 2015), the court found that the "special conditions" language on a signed parole conditions form itself established consent to search his residence.

Dixon was still serving his sentence, his release on parole was a variation of incarceration, and he was released only on the condition that he submit to suspicionless searches. Thus, according to *Samson*, *Smith* and *Stevenson*, Dixon did not enjoy a right to privacy, and defendants are entitled to qualified immunity with respect to Dixon's Fourth Amendment claim. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005)

9

(to defeat qualified immunity, plaintiff must show that (1) the defendants violated a constitutional right; and (2) the right was clearly established.). The moving defendants' motion for summary judgment of that claim should be granted.

### D.

As a prisoner proceeding *in forma pauperis*, Dixon is subject to the strictures of the Prison Litigation Reform Act (PLRA). Under the PLRA, the Court is required to dismiss *sua sponte* all or part of a complaint when the claims are without merit, or when the plaintiff seeks monetary damages from defendants who are immune from such relief. 28 U.S.C. § 1915(e)(2)(B).[1] Dixon's claims against all of the defendants arise out of the search of his garage. [ECF No. 1]. For the reasons already stated, that search did not violate the Fourth Amendment, and all of the defendants are entitled to qualified immunity. Thus, the claims against the nonmoving defendants should be dismissed *sua sponte*.

---

[1] Dixon's motion to proceed without prepayment of the filing fee was granted, though he was ordered to make a pay an initial fee of $55.94, and have a portion of his trust fund account withdrawn each month until the full $350.00 fee was paid. [ECF No. 4]. Section 1915(e)(2) applies "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid . . . ."

**E.**

Dixon's complaint also alleges violations of the Michigan Constitution and administrative code. A court has the authority to retain supplemental jurisdiction over state claims after all federal claims have been dismissed. *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892–93 (6th Cir. 1998). But "[a]s a rule of thumb ... [w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996*). See also Castelvetere v. Messer*, 611 F. App'x. 250, 256 (6th Cir. 2015) (same). That rule of thumb should be applied here, and Dixon's state claims should be dismissed.

In his counter-motion, Dixon requests that the Court either grant summary judgment in his favor or hold defendants' motion in abeyance to allow for discovery. [ECF No. 15, PageID 134]. Given the recommendations above, his motion should be denied.

## IV.     CONCLUSION

For the foregoing reasons, the moving defendants' motion for summary judgment **[ECF No. 13]** should be **GRANTED**, Dixon's motion for summary judgment **[ECF No. 15]** should be **DENIED**, the claims against the nonmoving defendants should be **DISMISSED SUA SPONTE**, and Dixon's supplemental state claims should be **DISMISSED WITHOUT PREJUDICE.**

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: December 7, 2017

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 7, 2017.

                                                s/Marlena Williams
                                                MARLENA WILLIAMS
                                                Case Manager